UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK ISRAEL PEREZ CINTO (A-Number: 221-489-296),<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, *et al.*,<br><br>Respondents. | Case No.  1:26-cv-02782-KES-CDB (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1)<br><br>**7-Day Objection Period** |

Petitioner Erick Israel Perez Cinto ("Petitioner"), a federal immigration detainee proceeding pro se, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 13, 2026, while in custody of the Immigration and Customs Enforcement ("ICE") at the Golden State Annex Detention Facility in McFarland, California, where he remains detained. (Doc. 1).  Respondents are the unnamed Warden of the Golden State Annex Detention Facility, the current or acting San Francisco ICE Field Officer, the current or acting ICE Director, the current or acting Homeland Security Secretary, and the current or acting United States Attorney General (collectively, "Respondents").  *Id.* ¶¶ 13-17.

For the reasons set forth herein, the undersigned recommends that Petitioner's petition for writ of habeas corpus be granted.

///

1

## I.       **Relevant Background**

The relevant facts are taken from the petition, Respondents' answer, and Petitioner's traverse. *See* (Docs. 1, 7, 9). Petitioner is a native and citizen of Guatemala who unlawfully entered the United States at an unknown place on an unknown date. (Doc. 7-2 ("Ex. 2") at 1) (January 15, 2026, DHS Form I-862 Notice to Appear ("NTA")).

Petitioner was convicted in Maryland state court on March 3, 2025, for the offense of driving a motor vehicle on the highway without required license and authorization and was sentenced to 60 days incarceration. (Doc. 7-1 ("Ex. 1") at 3) (January 15, 2026, Form I-831). On August 25, 2025, Petitioner was convicted in Maryland state court for the same charge and was sentenced to 60 days. *Id.* Although he disputes the allegation (*see infra*), on January 14, 2026, Petitioner was convicted in Maryland state court for the offense of obstructing and hindering and was sentenced to three years with all but 69 days suspended. *Id.* The Form I-862 dated January 15, 2026, indicates Petitioner refused to sign the NTA. Ex. 2 at 2.

On January 15, 2026, Petitioner was taken into ICE custody for the first time following his release from the Queen Anne County Detention Center in Centreville, Maryland, and was placed in pending removal proceedings. Ex. 1 at 2; (Doc. 7 at 1). The undersigned takes judicial notice that Petitioner has an upcoming individual hearing in immigration court on July 8, 2026.[1]

Petitioner alleges that he is trying to apply for I-589 political asylum and is filing for a U-visa. (Doc. 1 ¶ 18). He alleges that ICE did not identify changes that made his removal likely or allow him to contest his detention. *Id.* ¶ 23. He further alleges that he is non-violent and is not likely to pose either a flight risk or a threat to the community. *Id.* In his reply, Petitioner contends that Respondents' representation that he was convicted of obstructing and hindering is error as "that case … was [dismissed]." (Doc. 9 at 1).

---

[1] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited July 1, 2026, using Petitioner's A-Number and nationality); *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [ ] therein."); *Argueta v. Walgreens Co.*, 760 F. Supp. 3d 1028, 1034 (E.D. Cal. 2024) (taking judicial notice of information on federal government agency's website).

## II.    Governing Authority

### A.    The Writ of Habeas Corpus

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. *See* 28 U.S.C. § 2241. A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Relevant here, "in cases that do not involve a final order of removal, federal habeas corpus jurisdiction remains in the district court" pursuant to 28 U.S.C. § 2241 where the petitioner "challenges his confinement on statutory and constitutional grounds." *Nadaraja v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); accord *Flores-Torres v. Mukasey*, 548 F.3d 708, 713 (9th Cir. 2008) (holding "the district court has jurisdiction over Torres's habeas petition challenging his detention" in ICE custody).

### B.    Statutory Immigration Framework (8 U.S.C. § 1225 and § 1226)

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503 (N.D. Cal. Sept 12, 2025), which the undersigned adopts herein:

#### 1.    Full Removal Proceedings and Discretionary Detention (§ 1226)

The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release

3

would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at 1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2.   **Expedited Removal and Mandatory Detention (§ 1225)**

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been

admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must

conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

**3.      The Government's Recent Change in Position**

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes

account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

## III.　Exhaustion

### A.　Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)).  The Ninth Circuit, however, requires that, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)).  "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)).  "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)).  "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762, n.8 (9th Cir. 1978) ("Although the application of the rule requiring exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

7

**B.   Analysis**

Neither Petitioner nor Respondents address the issue of exhaustion.  *See* (Docs. 1, 7, 9).

The undersigned finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means given Respondents' position that detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) and they do not address exhaustion of administrative remedies in their opposition to the petition.  *See* (Doc. 7 at 1).  Further, the BIA has held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile.  *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

For these reasons and because Respondents do not argue Petitioner should be required to exhaust administrative remedies, the undersigned recommends that the prudential exhaustion requirement be waived for Petitioner's claim for habeas corpus relief.  *See, e.g*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)).

**IV.   Discussion**

Petitioner asserts a single cause of action for violation of his Fifth Amendment right to procedural due process.  *See* (Doc. 1 at 16-17).  However, in the alternative to immediate release, Petitioner seeks a writ of habeas corpus directing Respondents to provide him with a bond hearing before an immigration judge.  *Id.* at 17.  As set forth below, the undersigned finds that Respondents have failed to apply the correct statutory scheme in relation to Petitioner's continued detention and have unlawfully detained Petitioner without affording him a bond hearing as required under 8 U.S.C. § 1226(a), such that awarding Petitioner this form of relief (a bond hearing) is warranted.

**A.    Statutory Scheme: 8 U.S.C. § 1226(a) Applies**

Respondents contend that Petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and is subject to mandatory detention by ICE under § 1225(b)(2). (Doc. 7 at 1-2). Respondents represent and the record shows that Petitioner was arrested and detained by immigration authorities (ICE) for the first time on January 15, 2026, resulting in his current term of detention. (Doc. 7 at 1); Ex. 1 at 2-3.

Section 1225 governs the detention of noncitizens "seeking admission" into the United States. *See Jennings*, 583 U.S. at 289; *see id.* at 282 ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."). In contrast, § 1226 sets forth a "default rule" for noncitizens already present within the United States. *Id.* at 288. Relevant here, § 1225(b)(1) applies to aliens "arriving in the United States" or aliens who have "not been admitted or paroled into the United States" and have not "affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the [two]-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)1)(A)(i), (iii)(II).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). For § 1225(b)(2)(A) to apply, an examining immigration officer must determine that the individual is (1) an "applicant for admission," (2) "seeking admission," and (3) "not clearly and beyond a doubt entitled to be admitted." *See Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1113 (E.D. Cal. 2025) (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025)).

Here, Petitioner already was present and has resided in the United States for an undetermined length of time before he was arrested and detained by immigration authorities. Respondents do not argue, nor does the record show, that Petitioner has not been physically present in the United States continuously for the two-year period immediately prior the date of the determination of inadmissibility under § 1225(b) to lawfully place him in removal proceedings and

9

mandatory detention under that statutory regime.  *See* 8 U.S.C. § 1225(b).

Section 1225(b) attaches only where the noncitizen is "seeking admission."  Petitioner already resided in the United States for an undetermined period of time—at least since March 2025 when he was arrested and charged in state court for his first offense of driving a motor vehicle on a highway without required license and authorization (*see* Ex. 1 at 3)—prior to his encounter with and detention by immigration authorities and, thus, neither is "seeking admission" nor subject to inspection within the meaning of § 1225(b)(2)(A).  Further, notwithstanding Petitioner's representations that he is "trying to" apply for political asylum and for a U-visa (Doc. 1 ¶ 18), the record does not reflect that Petitioner took any affirmative act in furtherance of seeking adjustment of status.  Regardless, in the event Petitioner had done so, it would not change the fact that § 1226 governs immigration arrests conducted within the interior of the country.  *See Diaz v. Albarran*, No. 3:25-cv-09837-JSC, 2025 WL 3496686, at *3 (N.D. Cal. Dec. 5, 2025) (rejecting government's position that petitioner is an applicant for admission "'twice over' because he (1) is present without having been admitted or paroled[] and (2) has a pending application to adjust his status to that of a permanent resident"; finding that § 1226 governs immigration arrests conducted within the interior of the United States); *Torres v. Bondi*, No. 25-cv-02457-BAS-MSB, 2025 WL 3214773, at *4 (S.D. Cal. Nov. 18, 2025) (finding detention of a petitioner with longstanding residency in the United States, an approved Form I-130, and a scheduled adjustment of status interview is governed by § 1226); accord *Ortiz v. Chestnut*, No. 1:26-cv-01167-DC-SCR (HC), 2026 WL 508419, at *4 (E.D. Cal. Feb. 24, 2026) (same).

Based on these facts, the plain language of § 1225(b) demonstrates that it is inapplicable to Petitioner.  Petitioner is not "arriving" in the United States but rather arrived here before he was arrested in January 2026.  Further, Respondents have not shown that an examining immigration officer made any determination under § 1225(b)(2)(A) that Petitioner is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted."  *See Lepe*, 801 F. Supp. 3d at 1113. Indeed, the Record of Deportable/Inadmissible Alien form filed by Respondents indicates that upon his arrest, Petitioner was issued a Notice to Appear and placed into section 240 removal proceedings, and Respondents do not contend or show that Petitioner properly was placed in

expedited removal under § 1225, further illustrating that DHS chose to place Petitioner in removal proceedings with greater procedural protections than a noncitizen in expedited removal proceedings. *See* Ex. 2; *Garcia v. Chestnut*, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *8 (E.D. Cal. Dec. 31, 2025) (citing *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 143 (W.D.N.Y. 2025) ("Because DHS chose to place Mata Velasquez in section 240 proceedings instead of pursuing expedited removal in the first instance—even though it was not required to do that—the government vested Mata Velasquez with the rights that Congress guaranteed non-citizens in those proceedings.").

Under these circumstances, and having determined that the mandatory detention framework under § 1225(b) does not apply to Petitioner, the undersigned finds that § 1226(a) provides the proper framework for noncitizens already residing in the United States. *See, e.g.*, *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1076-77 (S.D. Cal. 2025). In *Garcia*, three petitioners entered the United States and resided in the country for some time before they were arrested and placed into immigration detention in June and July 2025. *Id.* at 1070. These petitioners, like Petitioner here, were charged by ICE with inadmissibility as being present in the United States without being admitted or paroled. *Id.* The *Garcia* court found that § 1225(b) did not apply to these petitioners because they were not "seeking admission" within the meaning of that statute and that the petitioners' detention therefore was governed by § 1226(a), including for discretionary detention and a bond determination hearing. *Id.* at 1076-78; *see Martinez*, 792 F. Supp. 3d at 221 ("[S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'") (citing *Jennings*, 583 U.S. at 288-89).

Other courts likewise have found that the text of sections 1225 and 1226, coupled with application of commonly used canons of statutory interpretation, legislative history, and ICE's historical practices predating DHS's recent shift in policy, weigh in favor of finding that section 1226(a)'s discretionary framework governs the detention of noncitizens who, like Petitioner, is already in the country when encountered by immigration authorities. *See Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025); *Otero v. Robbins, et al.*, No. 1:25-cv-1790 CSK, 2025 WL 3704453, at *5 (E.D. Cal. Dec. 22, 2025) (collecting cases, adopting the reasoning of the

11

*Lepe* court, and finding that "[t]his Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondents' interpretation of Sections 1225 and 1226"); *Morales-Flores v. Lyons*, No. 1:25-cv-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases and noting "Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful"); *J.Y.L.C. v. Bostock*, No. 3:25-cv-02083-AB, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (citing cases and noting that this conclusion is "consistent with the holdings of dozens of district courts across the country"); *Mercado v. Francis*, 811 F. Supp. 3d 487, 494 (S.D.N.Y. 2025) (same).

Having found that Petitioner unlawfully is detained by Respondents without affording him a custody redetermination to which he is entitled under § 1226(a), the undersigned addresses below the relief that should be awarded.

**B.      Remedy**

"Under § 1226(a) and its implementing regulations, a detainee may request a bond hearing before an IJ at any time before a removal order becomes final." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk, the IJ will order his release." *Id.* (internal quotation and citations omitted).

Based on Petitioner's allegations, and as the record indicates, Petitioner has not been formally evaluated by any immigration authority regarding his risk of flight or danger to the community. *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Additionally, Respondents do not assert that Petitioner has been provided a compliant bond hearing. While Respondents maintain that Petitioner was detained pursuant to § 1225, they have neither argued nor proffered facts in support of any argument that Petitioner is a flight risk or danger to the community. The record shows that

Petitioner was arrested and convicted for driving without a license in March and August 2025, and for obstructing and hindering in January 14, 2026, but Petitioner contends that his January 2026 charge was dismissed and did not incur a conviction. (Doc. 9 at 1).

Under these circumstances, the undersigned will recommend the Court order Respondents to provide Petitioner with a statutorily compliant bond hearing. *See Lopez v. Chestnut*, No. 1:26-cv-01455-JLT-EPG (HC), 2026 WL 640887, at *1 (E.D. Cal. Mar. 6, 2026) (ordering bond hearing where petitioner did not have lawful status and had resided in the United States for a significant length of time); *Dasilva v. Rios*, No. 1:26-cv-03703-JLT-SAB (HC), 2026 WL 1506334, at *2 (E.D. Cal. May 29, 2026) (same where petitioner was detained by ICE after incurring a conviction for simple battery); *R.P.V. v. Wofford*, No. 1:26-cv-01010-JLT-EPG (HC), 2026 WL 494748, at *2 (E.D. Cal. Feb. 23, 2026) (same where petitioner had one conviction related to driving under the influence of alcohol).

### C. Respondents' Reference to Ninth Circuit Appeals

Separately, Respondents assert that there are matters pending appeal before the Ninth Circuit that bear on the issues presented in this case. (Doc. 7 at 2 n.1; citing, *inter alia*, *Rodriguez v. Bostock*, No. 25-6842). Having found that Petitioner is detained by Respondents without affording him a custody redetermination to which he is entitled under § 1226(a), the undersigned will not recommend holding the matter in abeyance pending said appeals. *See T.M. v. Warden, California City Corr. Ctr.*, No. 1:26-cv-02667-TLN-SCR, 2026 WL 1045525, at *4 n.2 (E.D. Cal. Apr. 17, 2026) (declining to "delay issuing relief on the prospective chance" that an appeal may change the outcome of a claim).

### V. Conclusion and Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (Doc. 1) be GRANTED.

2. Respondents be ORDERED to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order, in which the parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and presents a flight risk if not detained.

3.  At least 72 hours before the scheduled hearing, Respondents SHALL provide notice of the hearing to Petitioner.  Petitioner SHALL have the right to be represented by counsel at the hearing, and he SHALL be entitled to appear at the hearing.  If counsel has filed an appearance in the immigration proceedings, counsel SHALL receive notice of the scheduled hearing at least 72 hours before the hearing.

4.  If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Respondents be ORDERED to release Petitioner from custody immediately and forbear from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing consistent with this order.

5.  The Clerk of the Court be DIRECTED to enter judgment in favor of Petitioner and close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  **Within seven (7) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given the nature of Petitioner's harm, the finding of a violation of the U.S. Constitution by Respondents, and the fact that the parties have extensively briefed the issues involved.  *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").

Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these findings and recommendations under 28 U.S.C. § 636(b)(l)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

14

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **July 2, 2026**

_____
UNITED STATES MAGISTRATE JUDGE

15